## Frederick S. GILBERT and Frank Cochran, Plaintiffs,

### v.

## ATLANTIC RICHFIELD CO., Defendant.

### Civ. No. 15635.

United States District Court,
D. Connecticut.

Jan. 10, 1978.

Clendenen & Lesser by William H. Clendenen, Jr., David M. Lesser, New Haven, Conn., for plaintiffs.

Thompson, Weir & Barclay by Robert N. Schmalz, New Haven, Conn., John F. McLaren, Philadelphia, Pa., for defendant.

## MEMORANDUM OF DECISION

LUMBARD, Circuit Judge *:

In this action, tried to the court on October 27, 1977, two credit card holders seek to recover statutory damages from the issuer of their credit cards, Atlantic Richfield Company (Atlantic Richfield or the Company), for alleged violations of the Federal Consumer Credit Protection Act (FCCPA), 15 U.S.C. § 1601 to § 1681t (1970), and various Connecticut consumer credit provisions. The plaintiffs charge that Atlantic Richfield's monthly billing statements failed adequately to disclose information regarding the billing period and calculation of the finance charge, contained confusing terms, and suggested an interest rate illegal under Connecticut law. The court finds no merit to these claims and accordingly finds for the defendant.

The material facts are not in dispute. Sometime in 1972 plaintiff Frank Cochran, a Connecticut attorney, applied for and received in the mail two credit cards from Atlantic Richfield, a retailer of automobile gasoline and related products. During the months of January, February, and March of 1973, Cochran and his wife used these cards to purchase gasoline and oil for their two cars, which were used for both personal and business purposes. Overall, their credit card purchases at Atlantic Richfield stations in the first three months of 1973 totalled $14.85, $4.05, and $12.15 respectively. For each of the months in question, Cochran received a statement, contained within a standard Atlantic Richfield form known as the "ARPH–24," informing him of the status of his credit card account. Although the form provides space for past due amounts and finance charges to be imposed upon such amounts, these spaces were never used on Cochran's statements because in each instance he paid the amount due before any penalty charge could have been imposed. Thus, Cochran never paid any amount to Atlantic Richfield other than the price of the products he purchased.

In addition to the monthly statements, Cochran periodically received from Atlantic Richfield various advertising brochures offering for sale such items as radios, jewelry, and kitchen appliances. While Cochran never purchased any of these items, the brochures specified two methods of doing so: lump sum payment or instalments. In each case, the lump sum equalled the total of the instalments.

Plaintiff Frederick Gilbert, a Connecticut salesman, also holds an Atlantic Richfield credit card, which he received in 1967. Like Cochran, Gilbert primarily uses his card to charge oil and gas purchases for his two cars, both of which are used for personal and business purposes. Unlike Cochran, however, in 1972 Gilbert used his credit card to purchase a set of tires for one of his cars, a Ford Mustang, at a Goodyear tire store. Gilbert testified at trial that, although he uses both of his cars for business trips, he more often relies upon the Mustang, which results in the Mustang being used for business purposes between 25 and 50 percent of the time. The tire purchase totalled $221.02 and was amortized into six payments of $36.87 spread over six months, with the last payment due in January of 1973.

Gilbert, falling behind in his payments, failed to pay the past due amount of $99.80 showing on his December 1972 bill, and thus laid himself open to the 1.5 percent finance charge suggested on the ARPH–24 form. Nonetheless, Atlantic Richfield never imposed, and Gilbert never paid, any finance charge whatsoever. The record shows that the only action Atlantic Richfield took concerning the delinquent account was to send Gilbert a letter on December 26, 1972, re-

---

* Sitting by designation.

questing immediate payment of the past due amount. In addition to his continuing debt resulting from the tire purchases, Gilbert used his Atlantic Richfield card to incur charges of $2.50, $3.00, and $17.65 for the billing periods ending January 12, 1973, February 9, 1973, and March 9, 1973, respectively. Cochran and Gilbert brought this suit on February 23, 1973.

As the court finds that Atlantic Richfield offered consumer credit by volunteering to accept payment in instalments, it is unnecessary to reach the question whether the surcharge suggested by Atlantic Richfield's monthly statements was in fact a finance charge.[1] According to both federal and state regulations, anyone who offers credit, payment for which is to be in four or more instalments, is subject to truth in lending regulation—regardless of whether any finance or interest charge is actually imposed. See 12 C.F.R. § 226.2(p), (q), (s); Conn.Bank.Reg. § 36–395–11(11) to (13); *Mourning v. Family Publications Service,* 411 U.S. 356, 362, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1972). Thus, Atlantic Richfield came within the scope of federal and state regulations when it extended consumer credit to Gilbert by allowing him to pay in six monthly instalments for the tires he charged. Similarly, the company acted as a consumer creditor within the meaning of the FCCPA when it offered, through sales brochures sent along with its monthly bills, to sell Cochran kitchen appliances and other products and to allow payment under instalment plans requiring from six to twelve monthly payments. The court finds, therefore, that Atlantic Richfield offered or extended consumer credit within the meaning of federal and state law to both Cochran and Gilbert.

Plaintiffs assert several alleged deficiencies in Atlantic Richfield's disclosure of credit terms on their monthly billing statements, all of which the court finds to be without merit. First, plaintiffs complain of Atlantic Richfield's use of terms at variance with those required by Connecticut regulations.[2] Connecticut regulations require that in making certain disclosures on monthly bills specific terms be used, including "payment," "finance charge," and "periodic rate." See Conn.Bank.Reg. § 36–395–6(3) to (5). In using these terms, Atlantic Richfield embellished them slightly, denominating amounts "deduct payments," "past due finance charge," and "monthly periodic rate." No testimony was adduced at trial that these plaintiffs, or any other individuals, have actually been confused by the Company's nomenclature. Moreover, it is difficult to imagine how the minute variations between Atlantic Richfield's terminology and that specifically required by the Connecticut regulations could in any way mislead or confuse these or any other debtors. Accordingly, the court finds that the terminology used on Atlantic Richfield's ARPH–24 form is in compliance with Connecticut standards of fair disclosure.[3]

---

**1.** On this record, it would be difficult to find that Atlantic Richfield offered credit in exchange for a finance charge. On each bill the creditor unequivocally stated in two places that payment was "due upon receipt of statement." Moreover, the one time that defendant Gilbert failed to retire his debt within the time provided, the Company made no move to impose any surcharge whatsoever—conduct distinctly different from that of the normal consumer creditor.

**2.** The Federal Reserve Board, acting pursuant to § 105 of the FCCPA, 15 U.S.C. § 1604 (1970), has exempted certain credit transactions in Connecticut from the substantive requirements of the FCCPA and federal regulations thereunder. See 12 C.F.R. § 226.12 Supplement III(e), 35 Fed.Reg. 11992 (July 25, 1970); *Ives v. W. T.*

*Grant Co.,* 522 F.2d 749, 753 (2d Cir. 1975). Thus, under 12 C.F.R. § 226.12(c), in civil actions brought under the FCCPA concerning Connecticut consumer transactions the substantive requirements of Connecticut truth in lending law are treated as if incorporated into the federal statute. Accordingly, the Connecticut provisions dealing with the disclosures required in consumer credit transactions govern the federal claims in the instant case, rather than the substantially identical federal provisions.

**3.** The court also rejects plaintiffs' complaint that Atlantic Richfield violated Conn.Bank.Reg. § 36–395–5(a) by failing to print "finance charge" more conspicuously than another required term, to wit "notice." Even if this small oversight constitutes a technical violation of

■ The plaintiffs also contend that the ARPH–24 form fails adequately to disclose the length of the billing period and the method used in calculating finance charges. Connecticut regulations require that monthly billing statements specify,

the closing date of the billing cycle and the outstanding balance in the account on that date . . . accompanied by the statement of the date by which, or the period within which, payment must be made to avoid additional finance charges. Conn.Bank.Reg. § 36–395–6(9).

Although plaintiffs concede that Atlantic Richfield's ARPH–24 states the closing date of the billing cycle and the outstanding balance in the account on that date, they argue that Connecticut regulations were not complied with because the form does not state the period within which the entire outstanding balance may be paid without incurring finance charges. The Company statement includes a clear statement, however, of the "past due amount,"[4] and tells the debtor that if this amount is "paid within 25 days of Closing date [the debtor] will avoid addition of Past Due *Finance Charge*. . . ." The court finds that this information amply satisfies the requirements of Conn.Bank.Reg. § 36–395–6(9). Nowhere do the Connecticut regulations require that the debtor be informed of when additional finance charges might be imposed in the indefinite future. All that is required is that the creditor inform the debtor of how much must be paid before the next billing period in order to avoid finance charges; this is precisely what the ARPH–24 form does.

Similarly without merit is plaintiffs' claim that Atlantic Richfield failed to explain its method for calculating possible finance charges. On the reverse side of the monthly billing statements appears a detailed and thorough statement, reproduced in the margin,[5] which fully informs card holders of the method for calculating finance charges.

■ Finally, plaintiffs argue that defendant Atlantic Richfield violated the FCCPA and Connecticut truth in lending provisions by misstating the applicable rate of interest, inasmuch as it represented that it would charge interest at an annual percentage rate of 18 percent on overdue amounts, when in fact it could charge only 12 percent under Connecticut law. See Conn.Gen.Stat. § 42–133c. Even if the plaintiffs are correct in their interpretation of Connecticut law, a question the court does not reach,[6] the defendant did not violate federal and state truth in lending requirements by representing that it would charge interest at the rate of 18 percent per year. Indeed, there is no indication in the record that the Company would not have charged such a rate to these plaintiffs, and subsequently have litigated the propriety of

Connecticut regulations, it is not material enough to warrant an award of statutory damages.

4. According to the ARPH–24 form, the "new balance," which included all debts outstanding at the closing date of the billing cycle, was due upon receipt of the statement. If this amount was not paid, then it became the "past due amount" on the next statement. The debtor then had twenty-five days after the closing date of the second statement to pay the past due amount *before* any surcharge would be imposed. The surcharge would be levied upon any of the past due amount remaining unpaid at the end of this twenty-five day period. Thus, *on any given statement the new balance might be greater than the past due amount,* inasmuch as it included both the debt unpaid since the previous billing and any intervening new charges.

5. "Balance on which Past Due *Finance Charge* is computed . . . is determined by deducting from the Previous Balance, Payments, Credits, previously billed and unpaid Past Due *Finance Charges,* and previously billed and unpaid charges where a Finance charge was added at the time of the transaction." (emphasis in original)

6. Plaintiffs also present a pendent state law claim that the defendant violated Conn.Gen. Stat. § 42–133c. This claim is frivolous, however, inasmuch as the plaintiffs concede that Atlantic Richfield did not charge them any finance charge whatsoever, thereby steering wide of the statutory mark of one percent per month.

its actions, if they were challenged. Moreover, to interpret the FCCPA otherwise would mean that every violation of state usury law also would constitute a violation of the FCCPA—a result neither intended by Congress, see 1968 U.S.Code Cong. & Admin.News pp. 1962, 1963, nor supported by any cases referred to the court by counsel. Accordingly, the court finds that the defendant's representations of the 18 percent annual percentage rate violated neither federal nor state law.

This opinion constitutes the court's findings of fact and conclusions of law, pursuant to Rule 52, Fed.R.Civ.P.

The complaint is dismissed, with costs to the defendant.